POLIKOFF ET AL., APPELLEES, *v.* ADAM ET AL., APPELLANTS.

[Cite as *Polikoff v. Adam* (1993), 67 Ohio St.3d 100.]

(Nos. 92–1116, 92–1117, 92–1118 and 92–1119—Submitted
May 18, 1993—Decided August 11, 1993.)

102

Gallagher, Sharp, Fulton & Norman, James F. Koehler, D. John Travis and Timothy J. Fitzgerald, for appellees.

Jones, Day, Reavis & Pogue, Patrick F. McCartan, Hugh R. Whiting and Jefferey D. Ubersax, for appellants Robin W. Adam, Charles T. Duncan, Martin Feldstein, John S. Foster, Jr., Clifton C. Garvin, Jr., Joseph T. Gorman, Karen N. Horn, E. Bradley Jones, William F. Kieschnick, William S. Kiser, Ruben F. Mettler, P. Roy Vagelos, D.V. Skilling, Martin Abrams and John McGee.

Peter S. Levine, for appellant TRW, Inc.

Murray & Murray, Co., L.P.A., Dennis E. Murray, Sr. and Dennis E. Murray, Jr., urging affirmance for amicus curiae, Murray & Murray, Co., L.P.A.

Squire, Sanders & Dempsey and Stacy D. Ballin, urging reversal for amici curiae, Ohio Chamber of Commerce and the Ohio Manufacturers' Association.

ALICE ROBIE RESNICK, J.   In deciding this case, we are once again asked to define the characteristics of a final, appealable order.   R.C. 2505.02 defines a "final order" as "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial."

Generally, an order denying a motion to dismiss is not a final order.   Appellants, however, assert that the order denying their motion to dismiss is an order that was made in a special proceeding and affects a substantial right.   Our analysis begins with the question of whether the order was entered in a special proceeding.

Over the past twelve years, the question of whether a particular order was entered in a special proceeding has been determined by the application of a balancing test which was first set forth in *Amato v. Gen. Motors Corp.* (1981), 67 Ohio St.2d 253, 21 O.O.3d 158, 423 N.E.2d 452.   Formulating the test, this court stated that the balancing test "weighs the harm to the 'prompt and orderly disposition of litigation,' and the consequent waste of judicial resources, resulting from the allowance of an appeal, with the need for immediate review because appeal after final judgment is not practicable."   *Id.* at 258, 21 O.O.3d at 161, 423 N.E.2d at 456.   Applying the newly adopted balancing test, the *Amato* court concluded that a decision certifying a class action is an order entered in a special proceeding and is, therefore, final and appealable.   *Id.* at 258–259, 21 O.O.3d at 161–162, 423 N.E.2d at 456.   See, also, *Dayton Women's Health Ctr. v. Enix* (1990), 52 Ohio St.3d 67, 555 N.E.2d 956, certiorari denied (1991), 498 U.S. 1047, 111 S.Ct. 753, 112 L.Ed.2d 773.

Notwithstanding this court's use of the balancing test, the test itself and the inconsistent application thereof have come under increased criticism in recent years.   See, *e.g. Stewart v. Midwestern Indemn. Co.* (1989), 45 Ohio St.3d 124, 127–128, 543 N.E.2d 1200, 1203–1204 (Douglas, J. dissenting).

Accordingly, a review of the historical development of what constitutes a "special proceeding" is in order.   One of the earliest cases to confront the concept of special proceedings was *William Watson & Co. v. Sullivan* (1855), 5 Ohio St. 42.   In *Watson*, this court held: "An order of the court of common pleas, discharging an attachment against a resident as to the whole of the property attached, is an order affecting a substantial right made in a special proceeding, which may be reversed, pending the action in which the order of attachment was made."   *Id.* at syllabus.

Watson & Company had filed an action against Sullivan and at the same time secured an order attaching Sullivan's property. The attachment was discharged by the court of common pleas and Watson & Company sought review of the discharge order in the district court. Sullivan moved the district court to dismiss the appeal on the ground that it could not be entertained until after determination of the underlying action.

This court found that Section 3 of the former Code of Civil Procedure in the State of Ohio, 51 Ohio Laws 57 *et seq.*, "abolishes the distinction between *actions at law* and *suits in chancery,* and substitutes in their place but one form of action, called a civil action. The commissioners, in their report to the legislature upon this section, say: 'A civil action, under this code, will comprehend every proceeding in court heretofore instituted by any and all the forms hereby abolished. Every other proceeding will be something else than an action—say, "a special proceeding." ' By section 604 of the code, it is provided that the code shall not affect any special statutory remedy not heretofore obtained by action. The legislature seems to regard all proceedings not theretofore obtained by suit or action, as a special proceeding or special statutory remedy; and it would seem to follow, that a provision in the code providing a proceeding not by action would be a special proceeding." (Emphasis *sic.*) *Id.* at 44.[6]

In *Missionary Soc. of M.E. Church v. Ely* (1897), 56 Ohio St. 405, 47 N.E. 537, this court was asked to determine whether an application to the probate court to admit an alleged will was a special proceeding and whether the order refusing to admit the will was a final order. Answering in the affirmative, the court stated: "As to the first inquiry, it seems to us there can be but little difficulty. Our code does not, as does the code of New York, specify that every remedy which is not an action is a special proceeding, nor does [*sic* ] our statutes give any definition of an action or a special proceeding. But we suppose that any ordinary proceedings in a court of justice, by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, involving the process and pleadings, and ending in a judgment, is an action, while every proceeding other than an action, where a remedy is sought by an original application to a court for a judgment or an order, is a special proceeding." *Id.* at 407, 47 N.E. at 538.

In *In re Estate of Wyckoff* (1957), 166 Ohio St. 354, 357–358, 2 O.O.2d 257, 259–260, 142 N.E.2d 660, 663–664, this court stated:

---

6. Section 604 of the Code, 51 Ohio Laws 161, is the predecessor of Civ.R. 1(C)(7), which provides that the Civil Rules, "to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (7) in all other special statutory proceedings * * *."

"We think it can accurately be said that the term, 'civil action,' as used in our statutes embraces those actions which, prior to the adoption of the Code of Civil Procedure in 1853 abolishing the distinction between actions at law and suits in equity, were denoted as actions at law or suits in equity; and that other court proceedings of a civil nature come, generally at least, within the classification of special proceedings.

"The proposition is simply and cogently put as follows in the case of *Schuster v. Schuster* [1901], 84 Minn., 403, 407, 87 N.W., 1014, 1015:

" 'Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term "special proceedings." '

"Therefore, the proceeding provided by Section 2117.07, Revised Code, in connection with which a petition and no other pleadings are required and wherein there is notice only, without service of summons, and which represents essentially an independent judicial inquiry, is a special proceeding.   * * * "

Similar rationale was employed by this court in deciding *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 67 O.O.2d 90, 310 N.E.2d 233, and *Snell v. Cincinnati St. Ry. Co.* (1899), 60 Ohio St. 256, 54 N.E. 270.   Evaluating a situation similar to the case before us, the *Snell* court held: "The application [for a change of venue] was made in a pending civil action, and was one authorized to be made in such an action.   It was a step taken in that action preliminary to its trial, and one which, to be of any avail, it was necessary should be taken before the trial.   * * * The order, nevertheless, was but an interlocutory one in the progress of the case, which could not be made the foundation of an independent proceeding in error, but was properly reviewable on error prosecuted to the final judgment.   And, for this reason, the plaintiff did not waive the error in the overruling of his application, by thereafter submitting to the trial of the action without objection. There was nothing else to be done except to dismiss the action;  for until final judgment he could not have the error corrected, or be restored to his right to have his change of venue." *Snell, supra,* at 272, 54 N.E. at 277.

In *Kennedy,* the court reiterated that "[n]either the General Assembly nor this court has attempted to define with specificity the identifying characteristics of a 'special proceeding' under R.C. 2505.02.   Instead, each case has been decided by reviewing the specific proceeding in question." *Kennedy,* 38 Ohio St.2d at 88, 67 O.O.2d at 91, 310 N.E.2d at 235.   The court found that discovery techniques were pretrial procedures designed to aid in the final disposition of the lawsuit and that orders entered during the discovery phase were an integral part of the action in which they were entered and were not orders rendered in a special proceeding. *Id.* at 89, 67 O.O.2d at 92, 310 N.E.2d at 235.

In *Bernbaum v. Silverstein* (1980), 62 Ohio St.2d 445, 16 O.O.3d 461, 406 N.E.2d 532, this court deviated slightly from its previous method of analyzing final orders and offered a glimpse of what eventually became the *Amato* balancing test. The *Bernbaum* court set forth a list of decisions exemplifying its reluctance to allow immediate review of rulings that are entered during the pendency of an action and stated that such interlocutory review was in opposition to the prompt and orderly disposition of the litigation. *Id.* at 447, 16 O.O.3d at 462–463, 406 N.E.2d at 534. Basing its analysis on the holdings of two criminal cases,[7] the court stated that "a prime determinant of whether a particular order is one made in a special proceeding is the practicability of appeal after final judgment." *Id.* at 447, 16 O.O.3d at 463, 406 N.E.2d at 534. The court found that the proceeding need not "be by 'original application' in order to qualify as a special proceeding, because of our concern that there be an effective mode of review of such rulings." (Footnote omitted.) *Id.* at 448, 16 O.O.3d at 463, 406 N.E.2d at 535. The court acknowledged the argument that a postponed appeal would not be effective, but answered that even an immediate appeal would not necessarily undo damage caused by the participation of an attorney who should have been disqualified. Notwithstanding its deviation from previous methods of inquiry, the court concluded that an order overruling a motion to disqualify counsel was not entered in a special proceeding and was not immediately appealable.

This court's decisions in *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 22 OBR 129, 488 N.E.2d 877; *Nelson v. Toledo Oxygen & Equip. Co.* (1992), 63 Ohio St.3d 385, 588 N.E.2d 789; and *Dayton Women's Health Ctr.*, *supra*, represent additional examples of the reasons it is necessary for us to return to a more predictable and exacting method of determining what constitutes an order that is entered in a special proceeding. In these cases, the *Amato* balancing test was applied to lead to the following disparate conclusions: a discovery order compelling the disclosure of confidential information was a special proceeding and immediately appealable (*Humphry*); an order determining that an action shall or shall not be maintained as a class action was entered in a special proceeding (*Dayton Women's Health Ctr.*); and an order compelling the production of documents allegedly subject to the work-product exemption was not made in a special proceeding and was not a final appealable order (*Nelson*). The

---

7. See *State v. Collins* (1970), 24 Ohio St.2d 107, 53 O.O.2d 302, 265 N.E.2d 261 (an order sustaining a pretrial motion to suppress evidence is an order entered in a special proceeding, although appeal is prohibited by R.C. 2945.70, since repealed), and *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897 (the overruling of a motion to dismiss on the grounds of double jeopardy is a final order), overruled in relevant part, *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353.

court's application of the balancing test varied with each case, proving that it is impossible to ensure the objective application of subjective criteria. Accordingly, in the interests of justice, clarity, and judicial economy, we find that it is time to abandon the balancing test and return to the method of determining what constitutes a special proceeding that was in use prior to *Amato*. We believe a more exacting method of analysis practiced by our juristic predecessors will result.

In the case before us, we are asked to decide whether the order denying appellants' motions to dismiss a shareholder derivative suit on the grounds that appellees failed to make the requisite prelitigation demand upon the directors is an order entered in a special proceeding. Employing our "new" method of analysis, we ask first whether shareholder derivative suits were recognized in equity, at common law, or established by special legislation. See *Wyckoff, supra,* 166 Ohio St. at 357, 2 O.O.2d at 259, 142 N.E.2d at 663, and *Watson, supra,* 5 Ohio St. at 44. We find that derivative suits originated more than one hundred years ago as actions in equity. *Ross v. Bernhard* (1970), 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729. Accordingly, shareholder derivative suits are among the procedures we consider "civil actions."

We look next at the nature of the relief sought. Appellees sought redress of an alleged wrong by filing a lawsuit in the court of common pleas. This is not a case wherein the aggrieved party filed a special petition seeking a remedy that was conferred upon that party by an Ohio statute nor is it a proceeding that represents what is essentially an independent judicial inquiry. See *Wyckoff,* 166 Ohio St. at 358, 2 O.O.2d at 260, 142 N.E.2d at 664. In examining the ultimate reviewability of the order, we find that the facts needed to analyze this precise issue will be unchanged by the ultimate disposition of the underlying action. The question of whether appellees complied with Civ.R. 23.1 will be preserved throughout this litigation. The underlying action can be distinguished from a special proceeding in that it provides for an adversarial hearing on the issues of fact and law which arise from the pleadings and which will result in a judgment for the prevailing party.

Hence, we determine that orders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02. *Amato* is therefore overruled. Applying the analysis set forth herein, we find that the order denying appellants' motion to dismiss was interlocutory. The order was

not entered in a special proceeding and could not be made the foundation of an independent appeal.[8]

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

---

8. In view of our disposition of this appeal, it is unnecessary for us to determine whether the trial court's order affected a substantial right. In determining appealability pursuant to R.C. 2505.02, under the circumstances of this case, the first inquiry for any reviewing court is whether the order was entered in a special proceeding. If it was, the court must then inquire as to whether the order affected a substantial right.